**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **MICHAEL P. B.,[1]** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 21-cv-1123-DWD** |
| ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY,** ) | |
| ) | |
| **Defendant.** ) | |

<u>**MEMORANDUM AND ORDER**</u>

**DUGAN, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) pursuant to 42 U.S.C. § 423 and 42 U.S.C. § 1383(c). For the reasons discussed below, the final agency decision is due to be affirmed.

<u>**Procedural History**</u>

Plaintiff applied for DIB and SSI on May 20, 2019, alleging a disability onset date of May 17, 2019. Plaintiff's claims were denied initially on December 11, 2019, and upon reconsideration on July 1, 2020.  Thereafter, Plaintiff filed a written request for hearing. After holding an evidentiary hearing, an Administrative Law Judge ("ALJ") denied the application on March 31, 2021. The Appeals Council denied Plaintiff's request for review on July 7, 2021, making the ALJ's decision the final agency decision subject to judicial

---

[1] In keeping with the Court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

1

review.  *See* 20 C.F.R. § 404.981.  Plaintiff exhausted administrative remedies and filed a timely complaint with the Court seeking judicial review of the Commissioner's decision.

## Applicable Legal Standards

To qualify for DIB and SSI, a claimant must be disabled within the meaning of the applicable statutes.[2] Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 404.1520.  An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in

---

[2] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. § 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. *See Craft v. Astrue*, 539 F.3d 668, 647, n.6 (7th Cir. 2008).  For convenience, most citations herein are to the DIB regulations.

significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

Here, the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the Court is not tasked with determining whether or not Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 203 L. Ed. 2d 504 (Apr. 1, 2019) (internal citations omitted).  In reviewing for "substantial evidence," the Court takes the entire administrative record into consideration but does *not* "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; the Court does not act as a rubber stamp for the Commissioner.  *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## The Decision of the ALJ

The ALJ followed the five-step analytical framework described above. Plaintiff was insured for DIB through December 31, 2024 (Tr. 22).  Plaintiff was 31 years old on the alleged disability onset date (Tr. 28).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date (Tr. 22). At step two, the ALJ found that Plaintiff has the following severe impairment: bipolar I

disorder (Tr. 22).  The ALJ also found that Plaintiff has the non-severe impairment of obesity (Tr. 23).  At step three, the ALJ found that Plaintiff does not have any impairments or combination of impairments that meet any of the listings set forth in the Listing of Impairments, 20 CFR, Part 404, Subpart P, Appendix 1 (Tr. 23).  As for Plaintiff's mental impairments, the ALJ concluded that Plaintiff's mental impairments did not satisfy the "paragraph B" or "paragraph C" criteria (Tr. 24).  The ALJ found that Plaintiff has mild limitations in the functional areas of understanding, remembering, or applying information and adapting or managing oneself, and moderate limitations in the functional areas of interacting with others and concentrating, persisting, or maintaining pace (Tr. 23-24).

Before proceeding to step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations:

> he can maintain the concentration required to perform simple routine tasks, remember work procedures, and make simple work-related decisions. The claimant cannot work at a fast pace such as an assembly line, but can stay on task and meet reasonable production requirements in an environment that allows the claimant to sustain a flexible and goal-oriented pace.  He can have occasional interaction with supervisors but no interaction with the public.

(Tr. 24).  At step four, the ALJ relied on the testimony of a vocational expert ("VE") to find that Plaintiff could not perform any past relevant work (Tr. 28). However, at step five, the ALJ found that Plaintiff was not disabled because he was able to perform other jobs that exist in significant numbers in the national economy (Tr. 28-29).

## The Evidentiary Record

### A. Plaintiff's Testimony and Evidentiary Hearing

Plaintiff was 31 years old on the alleged disability onset date of May 17, 2019 (Tr. 18, 218). From 2015 to 2018, Plaintiff worked as a cart associate at Wal-Mart and Sam's Club (Tr. 46). Plaintiff holds a bachelor's degree (Tr. 54). He also owns a lawn care business (Tr. 208). Plaintiff alleges disability based on his medical conditions of bipolar disorder, hypertension, anxiety disorder, and a stutter (Tr. 48, 216, 234).

On October 18, 2019, Plaintiff completed a Function Report (Tr. 234). In this report, Plaintiff stated that he lives with his sister, and needs reminders from his sister and mom to take care of his personal needs and grooming, and sometimes needs encouragement to do house and yard work (Tr. 235-236). Plaintiff reported having issues with money, including that he cannot pay bills on time, handle a savings account, or use a checkbook (Tr. 237). Plaintiff also reported issues with talking and conversations because of his stutter (Tr. 239), although he is social with his friends and family members and enjoys helping people when he can (Tr. 238). Plaintiff also indicated that his conditions affect his ability to talk, hear, complete tasks, concentrate, understand, follow instructions, and get along with others (Tr. 239).

On December 22, 2020, an evidentiary hearing was held (Tr. 35). Plaintiff was represented by an attorney at the hearing (Tr. 35). At the hearing, Plaintiff testified that he has an anxiety disorder, bipolar disorder, and a stutter (Tr. 48). Plaintiff testified that his psychological condition can become so extreme that he will stay around the house (Tr. 50-51). These extreme symptoms occur up to five days a month, and usually occur

one-day at a time (Tr. 51). Plaintiff also testified that his lawn care job is "intermittent" which lets him put off mowing a lawn on his bad days until he feels better (Tr. 52, Tr. 190). Plaintiff sees his treating physician, Dr. Muhammad Arain, M.D., every five or six months (Tr. 48-49). Plaintiff is on prescription medicine, which has helped him improve generally, and has also improved his sleep (Tr. 49-50). However, one of his medications aggravates his stutter (Tr. 48). His medications can also cause drowsiness, making it hard to wake up (Tr. 241)

Susan Shea, a vocational expert (VE) also testified at the evidentiary hearing. The VE testified that Plaintiff's prior employment in retail fell under light, semi-skilled work, with an SVP: 3 (Tr. 54). The ALJ then asked the VE to consider a hypothetical person with Plaintiff's age and education, no exertional limitations, and the non-exertional limitations set forth in Plaintiff's hypothetical RFC (Tr. 55). The VE testified that this hypothetical person could not perform Plaintiff's past work (Tr. 55) but could perform other work available in the work force, including medium level, unskilled work as a machine feeder, light level, unskilled work as a hand cleaner, and sedentary level, unskilled work as a table worker (Tr. 55-56). The ALJ then asked the VE to consider the same hypothetical person, but to assume that the individual was going to be off task for 20 percent of the workday or absent two or more days per month (Tr. 56). The VE testified that there would be no work for that individual (Tr. 56).

## B. Plaintiff's Medical Records

From May 2018 to September 2020, Plaintiff was treated by M. Sameer Arain, M.D. (Tr. 291-351; Tr. 339-342, Tr. 351-352). On May 15, 2018, Dr. Arain conducted an

6

outpatient evaluation (Tr. 305-308).  Plaintiff reported insomnia, and a history of manic episode, bipolar, and anxiety (Tr. 306).  Plaintiff had been previously hospitalized in 2005. Plaintiff denied symptoms of depression, suicidal ideation, homicidal ideation, and substance abuse, but reported anxiety symptoms and financial stressors.  Dr. Arain observed relatively normal findings on mental exam (Tr. 308).   Dr. Arain diagnosed Plaintiff with Bipolar I Disorder (Tr. 305). Dr. Arain prescribed two medications and requested a follow up in 3-4 weeks (Tr. 308).

On May 22, 2018, Dr. Arain examined Plaintiff (Tr. 303-304).  Plaintiff reported that his current medication was too expensive, and he could not afford it.  Plaintiff also reported that he experienced mild depression symptoms intermittently, and mild anxiety symptoms every day.  Plaintiff reported erratic sleep, but denied manic behaviors, hallucinations, delusions, or paranoid thoughts.  Plaintiff reported that his work at Walmart was demanding but getting better.  He denied negative life stressors, although he stated that his current symptoms impaired his functioning.  Dr. Arain conducted a mental status exam which included the following categories: appearance, attitude, psychomotor, mood, affect, speech, thought process, thought content, perceptual, cognition, level of consciousness, orientation, memory, intelligence, judgment, insight, suicidal, violent/homicidal, reasoning, attention/concentration, executive functioning, language, perception, and violent thoughts.  Dr. Arain reported no adverse findings in any category.  Dr. Arain changed Plaintiff's medications and recommended therapy.

On May 29, 2018, Dr. Arain spoke with Plaintiff's father (Tr. 301-302).  Plaintiff's father reported that Plaintiff was argumentative, dissociating from reality, having

7

difficulty at work, and that Plaintiff's step siblings felt intimidated by Plaintiff (Tr. 301). In response, Dr. Arain added a new medication to Plaintiff's treatment plan (Tr. 301).

On June 28, 2018, Dr. Arain examined Plaintiff again (Tr. 299-300). Plaintiff's parents and sister were present at this appointment. Plaintiff reported that he was feeling frustrated because his work was "short staffed." His sister further reported that Plaintiff had issues doing laundry. Plaintiff stated that he experienced mild depression symptoms intermittently, and mild anxiety symptoms every day. He reported erratic sleep, but denied manic behaviors, hallucinations, delusions, or paranoid thoughts. Plaintiff again reported that his work at Walmart was demanding. He indicated that he had positive life stressors, but no negative life stressors, and that his current symptoms impaired his functioning. Dr. Arain conducted the same mental status exam has before and reported no adverse findings in any category. Dr. Arain continued Plaintiff's treatment plan and recommended therapy.

On August 23, 2018, Dr. Arain examined Plaintiff again, also with Plaintiff's parents and sister present (Tr. 297-298). Plaintiff reported that he was "doing good" and was doing lawn care work. Plaintiff reported that his sleep was good, and he denied manic behaviors, hallucinations, delusions, or paranoid thoughts. He indicated that the had positive life stressors from work, but no negative stressors. Dr. Arain reported no adverse findings on his mental status exam, and continued Plaintiff's treatment plan.

Dr. Arain examined Plaintiff again on November 20, 2018 (Tr. 295-296), June 13, 2019 (Tr. 293-294), September 10, 2019 (Tr. 291-292), January 9, 2020 (Tr. 339-340), May 15, 2020 (Tr. 341-342), and September 3, 2020 (Tr. 351-352). At each appointment, Plaintiff

reported that he was "doing good" and had good sleep.  He also stated that he had mild anxiety symptoms "some days", and no symptoms of depression, manic behaviors, hallucinations, delusions, or paranoid thoughts.  Plaintiff denied negative life stressors but stated that his symptoms impair his functioning.  He also denied adverse effects to his medications.  Dr. Arain conducted the same mental status exam at each appointment and found no adverse findings in any category.  Dr. Arain continued managing Plaintiff's medications and continued to recommend individual therapy.  At the September 10, 2019, January 9, 2020, May 14, 2020, and September 3, 2020, appointments (Tr. 291-292, Tr. 339-342, 351), Dr. Arain noted a stutter and delayed speech, but reported no other abnormal findings.

Plaintiff's mother attended Plaintiff's appointments on June 13, 2019, and September 10, 2019 (Tr. 291-294).  On June 13, 2019, she stated that Plaintiff had problems with gambling and debt and would file for bankruptcy. However, Plaintiff reported that he was "stable" but had some anxiety because of his lack of vehicle. On September 10, 2019, Plaintiff's mother stated that Plaintiff "has been doing well."  Plaintiff reported similarly.  Plaintiff's sister attended the appointments on May 14, 2020, and September 3, 2020.  At the September 3, 2020, appointment, she reported that Plaintiff was doing a lot better overall, that he attended activities, but was not able to keep a job or schedule with his current symptoms (Tr. 351).  She also reported that Plaintiff's stuttering made it hard to communicate (Tr. 351).

In addition to Dr. Arain's treatment notes, Dr. Arain completed three medical source statements, dated June 18, 2019 (Tr. 287), September 26, 2019 (Tr. 316), and January

24, 2020 (Tr. 338).  In his January 2020 statement, Dr. Arain indicated that Plaintiff had "poor or none" ability to deal with work stresses, understand, remember, and carry out complex job instructions, understand, remember and carry out detailed, but not complex, job instructions, and relate predicably in social situations; "fair" ability to relate to co-workers, deal with the public, interact with supervisors, function independently, understand, remember and carry out simple job instructions, behave in an emotionally stable manner, and demonstrate reliability; and "good" ability to follow work rules, use judgment, and maintain attention/concentration and maintain his personal appearance. Dr. Arain concluded that Plaintiff's impairments affected all job-related activities, and that Plaintiff would be reasonably expected to miss two or more days of work per month and to be late in arriving to work on two or more occasions per month.  He also concluded that Plaintiff would be off task 40% of an eight-hour period because of his psychological conditions, however, he concluded that Plaintiff had the capability to manage benefits in his own interest.

Dr. Arain's June 2019 and September 2019 concluded similarly (Tr. 287; Tr. 316). Although in his June 2019 statement, Dr. Arain also indicated that Plaintiff had "fair" ability to relate predictability in social situations (Tr. 289).  However, by September 2019, Dr. Arain indicated that Plaintiff's ability to relate predicably in social situations was "poor or none" (Tr. 315).  These statements were also consistent with Dr. Arain's April 26, 2021, medical source statement which was submitted after the evidentiary hearing (Tr. 12-15).

Plaintiff's medical records also include a visit with Plaintiff's primary care

physician, Erin Friedman, DO, who examined Plaintiff on November 18, 2019 (Tr. 324). At this time, Plaintiff reported no abnormalities, including no depression, no sleep disturbances, no anxiety, no suicidal thoughts, and no mood swings (Tr. 325). Dr. Friedman reported normal findings and indicated that Plaintiff's physical exam was unremarkable (Tr. 326).

### C. State Agency Consultants

In December 2019, state agency medical consultant, Lenore Gonzalez, M.D. completed the medical portion of Plaintiff's Disability Determination Explanation at the Initial level (Tr. 59), indicating that Plaintiff had no severe medical impairments. Dr. Gonzalez observed that Plaintiff had no physical limitations, and his "PE" was unremarkable (Tr. 63). State agency medical consultant, M. W. DiFonso, PsyD., completed the psychiatric review technique portion of the Disability Determination Explanation (Tr. 64), and indicated that Plaintiff had a medically determinable impairment (Tr. 64).

Dr. DiFonso evaluated Plaintiff's impairments under Listing 12.04 (Depressive, Bipolar, and related Disorders) and Listing 12.06 (Anxiety and Obsessive-Compulsive Disorders). Dr. DiFonso found that Plaintiffs' impairment does not precisely satisfy the diagnostic criteria for those listings (Tr. 64). He further found that Plaintiff had mild limitations in understanding, remembering, or applying information and adapt or managing oneself, but moderate limitations in interacting with others and concentrating, persisting, or maintaining pace (Tr. 64-67). Dr. DiFonso did not find evidence of the presence of Paragraph "C" Criteria (Tr. 64).

In June 2020, state agency medical consultant, Robert Vautrain, M.D. completed the medical portion of Plaintiff's Disability Determination Explanation at the Reconsideration level (Tr. 88) and found no changes in Plaintiff's conditions or new improvements (Tr. 94).  Agency consultant Howard Tin, PSYD, completed the psychiatric review technique portion of the Disability Determination Explanation, and concurred with Dr. DiFonso's prior assessment (Tr. 95-99).

### D. Third-Party Function Reports

In October 2019, Plaintiff's twin sister, Angela Blattner, completed an Adult Function Report for Plaintiff (Tr. 243).  Ms. Blattner reported that Plaintiff lived with her, and they spend a lot of time together eating meals, running errands, and going to family activities (Tr. 243).  Ms. Blattner also reported that Plaintiff's conditions limit his ability to work because he "[is] unable/unwilling to maintain schedule, cannot complete tasks assigned voluntarily and proactively, erratic sleep schedule, lethargic, severe stutter, must be coaxed and prompted to complete basic hygiene, will not cook, or provide for himself." (Tr. 243).  Ms. Blattner indicated that Plaintiff can engage in household activities, chores, prepare simple meals, and maintain his personal care, but struggles in these areas and typically requires prompting (Tr. 245).  Plaintiff can also drive a car and shop, but he is unreliable with money (Tr. 245-247). She also reported that Plaintiff is very social, although his stutter will increase with stress (Tr. 249).

In February 2021, Plaintiff's former coworker, Paul Goersch, submitted a letter to discuss Plaintiff's medical conditions (Tr. 286).  Mr. Goersch reported that he worked with Plaintiff for 20 months, during which time Plaintiff was a "very inconsistent

worker."  (Tr. 286).  Mr. Goersch described Plaintiff's behavior as arriving at the "last minute", "always tired", "somewhat scatter brained", "very hungry all the time", and with "the mindset of a child".  He also reported that Plaintiff fell asleep one day, ate sloppily to the point where he was not phased when his face was covered with barbeque sauce, and reminded him of a two- or three-year-old baby (Tr. 286).

<u>Analysis</u>

Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ failed to properly evaluate the opinion of Plaintiff's treating physician, Dr. Arain (Doc. 21).  As detailed above, Dr. Arain completed three treating source statements, dated June 18, 2019, September 26, 2019, and January 24, 2020.  In those statements, Dr. Arain reported that Plaintiff had "poor or none" ability to deal with work stress, understand, remember, and carry out complex job instructions, and to relate predictably in social situations.  Dr. Arain thus concluded that Plaintiff's conditions would cause him to miss or be late to work two or more days per month, and to be off task forty percent of the time during an eight-hour period.  Plaintiff argues that Dr. Arain's opinions, in addition to the testimony of the VE, require a finding that Plaintiff is disabled because he has a severely limited potential occupational base precluding him from all work.

The ALJ found Dr. Arain's opinion to be unsupported by Plaintiff's mental status examinations, and inconsistent with other portions of the record.  The ALJ provided the following analysis of Dr. Arain's opinion:

The assessments in functioning of fair or poor along with the missed days

and off-task assessments are not persuasive.  They are not supported by the record that showed normal mental status examinations throughout the period (Exhibit 2F; 7F; 8F). It is also inconsistent with the claimant's statements to this provider that he was doing well and had only mild anxiety symptoms along with the observations of his sister that he had shown improvement (Exhibit 8F). I considered these assessments, but finds [*sic*] that the record of evidence supports no more than moderate limitations in mental functioning.

(Tr. 27).

Plaintiff argues that the ALJ failed to explain how she considered Dr. Arain's opinions in accordance with SSA regulations for evaluating opinion evidence.  Plaintiff specifically complains that the ALJ failed to explain how the "supportability" and "consistency" factors were considered in the decision.  He also argues that the ALJ relied on an overly selective review of the record without considering evidence that was unfavorable to her conclusion.  *See, e.g., Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) ("The ALJ must confront the evidence that does not support [her] conclusion and explain why that evidence was rejected.").  Plaintiff offers three examples of evidence the ALJ allegedly ignored or mischaracterized:

1. A noted, dated May 29, 2018, summarizing Plaintiff's father statement made to Dr. Arain, indicating that Plaintiff was argumentative, dissociating from reality, and having difficulties at work (Tr. 301). In response to this statement, Dr. Arain changed Plaintiff's medications (Tr. 301);

2. A mental status examination, dated September 10, 2019, where Dr. Arain observed Plaintiff's delayed speech (Tr. 292); and

3. A statement made on September 3, 2020, by Plaintiff's sister, where she stated that Plaintiff was doing better, but also reported that Plaintiff had not been able to keep a job due to his inability to keep a schedule and impaired functioning (Tr. 351).

14

The guidance in 20 C.F.R. § 404.1520c governs the consideration of medical opinions for claims filed after March 27, 2017, which includes this case.  This Regulation eliminated the prior treating source rule, and instead provides that the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c.  The Regulation thus identifies specific factors for an ALJ to consider, including supportability, consistency, relationship to the claimant (length, frequency, purpose, and extent of the relationship), specialization, and other factors. 20 C.F.R. § 404.1520c(c)(1).  The Regulation specifies that the supportability and consistency of a physician's opinion are the most important factors for the ALJ to consider, and requires the ALJ to explain how she considered these two factors.  20 C.F.R. § 404.1520c(b)(1).  But the ALJ need not explain how she considered the remaining factors. 20 C.F.R. § 404.1520c(b)(1).  "Supportability" refers to the degree to which objective medical evidence supports the opinion, and "consistency," is the degree to which the opinion is consistent with other evidence. 20 C.F.R. § 404.1520c(a)-(c)(2).

Here, the ALJ summarized Dr. Arain's opinion and the medical record.  She then concluded that Dr. Arain's assessments of Plaintiff's "fair or poor" function, expected missed days, and off-task conclusions were not supported by the record that also showed normal mental status examinations throughout the period.  In reaching this conclusion, the ALJ specifically explained that Dr. Arain's opinion was not supported by the other findings he made when examining Plaintiff and detailed throughout Plaintiff's treatment notes (Tr. 27).  *See, e.g., Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) (Substantial

evidence supported the discrediting of a medical opinion when there was a "stark contrast" between the provider's treatment notes and his opinion).  She also reasoned that Dr. Arain's opinion was inconsistent with the statements Plaintiff made to Dr. Arain, including Plaintiff's statements that he was doing well and had only mild anxiety statements.  *See, e.g., Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (S.S.A. Oct. 25, 2017), 2017 WL 5180304, *7 (it is proper for the ALJ to compare statements claimant made to his medical provider with claimant's other statements in the record). Thus, the ALJ reasonably and sufficiently explained why she found Dr. Arain's opinion unpersuasive in accordance with the regulations.

The ALJ also sufficiently considered evidence that runs counter to her conclusion. The ALJ is required to "grapple with evidence that may run counter to her conclusion", but she is not required to evaluate or discuss every piece of evidence in the record. *Mueller v. Comm'r of Soc. Sec.*, No. 20-CV-1244-RJD, 2022 WL 704336, at *3 (S.D. Ill. Mar. 9, 2022) (citing *Moore*, 743 F.3d at 1123).  Nor is the ALJ "required to articulate how [she] considered evidence from nonmedical sources using the requirements of" Section 404.1520c(a)-(c).  20 C.F.R. § 404.1520c(d).

Contrary to Plaintiff's arguments, the ALJ specifically acknowledged Plaintiff's sister's statement that Plaintiff was having trouble keeping a job due to his schedule and stuttering (Tr. 26).  The ALJ also acknowledged Plaintiff's stuttering and the multiple non-medical statements reporting Plaintiff's difficulty in communicating because of the stuttering, including the statements made by Plaintiff's sister and former coworker (Tr. 26). However, the ALJ concluded that these statements were not completely consistent

with other evidence in the record, including: (1) Plaintiff's report that he had stuttered for many years prior to his alleged disability onset date and had been gainfully employed for several years despite his stutter (Tr. 26); (2) Dr. Arain's normal findings from Plaintiff's mental exams and the lack of documented speech issues (Tr. 291, 293, 339, 342); and (3) because Dr. Arain's medical source statements did not allege that Plaintiff's stuttering was a barrier to his employment, but instead highlighted Plaintiff's anxiety as the basis for his assessment (Tr. 287, 316, 338).  Nevertheless, the ALJ also accounted for Plaintiff's stutter in the RFC by limiting the RFC "to no public interaction and only occasional interaction with supervisors" (Tr. 26).

In sum, the ALJ sufficiently discussed the supportability and consistency of her opinion, and reasonably concluded that there is very little objective medical evidence in the record that supports Dr. Arain's opinion of Plaintiff's extreme limitations. Although the record contained a few abnormal findings which could have lent support to Dr. Arain's opinions, this does not establish that the ALJ's analysis was not based on substantial evidence.  *See Burmester*, 920 F.3d at 510 (citing *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (even if reasonable minds could differ as to whether Plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence); *see also Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012) (it is not the Court's role to re-weigh evidence or substitute its judgment of that of the ALJ). Instead, the ALJ provided detailed reasons for her findings that certain portions of Dr. Arain's opinion were not supported by the record.  Accordingly, substantial evidence supports the ALJ's rejection of portions of Dr. Arain's medical opinion regarding

Plaintiff's functional limitations.

## Conclusion

Because the ALJ followed the steps required by the regulations and supported her findings by pointing to substantial evidence in the record, the Court will not overturn the ALJ's decision. After careful review of the record as a whole, the Court is convinced that the ALJ's findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED**. The Clerk of Court is directed to enter judgment in favor of Defendant, and to close this case.

**SO ORDERED.**

Dated: March 15, 2023

_____
DAVID W. DUGAN
United States District Judge